## Atzinger v. Berger, et al.

(Decided January 30, 1913.)

Appeal from Jefferson Circuit Court.
(Chancery Branch, Second Division.)

1. Wills—Construction—Powers.—Where the language used in an instrument creating a trust, confers upon joint trustees, therein nominated, a naked power; that is, a simple, personal confidence reposed in the trustees, in order to make a valid conveyance of trust property, it is necessary for all to accept the trust and unite in the conveyance; if it confers a power, coupled with an interest, acceptance of the trust and conveyance of the trust property by one trustee is sufficient to pass title thereto.

2. Wills.—The language of a will creating a trust must be construed in the light of the attendant circumstances, surrounding the execution of the will, in order to ascertain the intention of the testator. When will is so construed, held, it created a power, coupled with an interest, and a conveyance of trust property by one of two nominated testamentary trustees, who qualified, passed the fee simple title thereto.

WEHLE & WEHLE, for appellants.

H. H. NETTLEROTH, JOSEPH SELLIGMAN and ALFRED SELLIGMAN, for appellees.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

The will of John W. Wallace was probated in 1883. In the fifth clause thereof, the testator devised to Thomas H. Wallace and Austin Peay certain property, in trust, for the use and benefit of his daughter, Caroline K. Wal-

lace. The same parties were named as executors of the will. Austin Peay did not qualify as executor and declined to accept the trust for the benefit of Caroline K. Wallace, but Thomas H. Wallace did qualify. The property so devised consisted of an undivided one-third interest in unimproved real estate in Louisville. In 1887, the trust property was conveyed to Martin Berger by Thomas H. Wallace as trustee for Caroline K. Wallace, and at the same time he and his brother, Arthur, in their own right, conveyed to the same grantee, their undivided interest in said property. The deed was likewise signed by Caroline K. Wallace, in her own right. Thereafter, Caroline K. Wallace married and children have been born to her; some of them are now infants. Martin Berger died, and in the settlement of his estate, the property in question was sold. A. Atzinger became the purchaser, and not being satisfied that the decedent, Berger, owned the fee to said property, filed exceptions to the report of sale and set up a state of facts which, his counsel insist, show that the decedent owned only a two-thirds interest in said property; and he sought to be relieved from accepting and paying for the property under his bid and purchase. Upon consideration, the exceptions were overruled and the sale confirmed. He appeals.

The clause of the will of Wallace, under consideration is as follows:

"I give and devise to Thomas H. Wallace and Austin Peay as trustee in trust for the use and benefit of my daughter, Caroline K. Wallace, two hundred and seventy-two and three fourths (272 3-4) acres of land taken from my farm in Christian County, Kentucky, near Garretsburg and embracing my late residence lately surveyed by H. P. Rives and bounded as follows:

(Here follows description.)

Also one-third (1-3) of my lots in Parkland, Jefferson County, Kentucky, and one-third (1-3) of the said lot of ground situated on 15th Street in Louisville, Kentucky, same conveyed to me by R. B. Alexander, trustee, &c., and also twenty-five (25) shares or twenty-five hundred dollars of my stock in Bank of Hopkinsville, the use, benefit and profits of said land, lots in Jefferson County and Louisville as also said Bank stock to go to my daughter, Caroline K. Wallace, during her natural life and at her death said land, lots of ground and Bank Stock to go to her children and if she should die leaving no chil-

dren surviving her then said land, lots and Bank Stock shall go to her brothers, Thomas H. Wallace and Arthur M. Wallace, and in the event of the death of either of them leaving child or children surviving, such child or children or their descendants shall have and receive that part of which his, her or their parent would be entitled to have and receive if living. The said trustees hereby appointed for my daughter, Caroline K. Wallace, said Thomas H. Wallace and Austin Peay, are hereby empowered and authorized to sell and convey for the benefit of said Caroline K. Wallace said one-third interest in Parkland lots in Jefferson County and lot of ground on 15th. Street in Louisville, Ky., and make title by deed to any purchaser or purchasers of said lots of ground or any part of same whenever in their opinion it shall be to the interest and for the advantage of said Caroline K. Wallace to do so, but said trustees are not given any power or authority whatever to sell and convey said 272 3-4 acres of land in Christian County, Ky., devised to them in trust for the use and benefit of said Caroline K. Wallace. * * * * *"

The sole question for determination is: Was Thomas H. Wallace one of the named trustees empowered to sell and convey the property described in this clause of the will, when his co-trustee, Peay, refused to accept the trust, and, of course, did not join with him in making the sale and conveyance?

The authorities are agreed that, if, when fairly construed, the language used by the testator may be said to create a naked power, that is, a simple personal confidence reposed in the trustees by the testator, then, in order to pass title, it was necessary for both to qualify and convey; and the failure of one so to do necessarily had the effect of invalidating the conveyance. If, on the other hand, the effect of the language was to create a power, coupled with an interest, then the trustee who did qualify and, in pursuance of the authority granted, made the sale and conveyance, passed a perfect title. Hill on Trustees (3rd Am. Ed.) pg. 472; 21 Cyc., 1106; Perry on Trusts (2nd Edition) p. 488; Story's Equity Jurisprudence (7th Ed.) sec. 1062.

With the view of ascertaining the intention of the testator, this provision of the will should be read in the light of the attendant circumstances surrounding its draft and execution. This is the daughter, for whom

he was making provision; she was just then entering womanhood. His evident purpose was to provide for her a comfortable support, commensurate with her surroundings and station in life. He wanted the property, which he was leaving to her, so managed as to furnish her a comfortable support. The property was unimproved city property, from which, in its then condition, she could derive no income whatever and upon which there was laid an annual burden in the shape of taxes which had to be paid; hence, in its condition it was not only not a source of income but a burden upon her, inasmuch as a portion of the income derived from the other property which she received from her father's estate, would, of necessity, have to be used to pay these taxes. Her father evidently did not intend that this property should be held by these trustees in the hope that it would ultimately have a greater value, for he expressly directs that it be sold by them for the benefit and best interests of his daughter; and it could not possibly be of benefit or interest to her unless she derived some profit from its use. No provision was made whereby the trustees were empowered to improve the property, so that it might be rented out and made profitable; hence, he undoubtedly contemplated that it should be sold by the trustees and the proceeds invested in income-bearing property. When viewed in this light, it is apparent that he did not intend that the failure to act of one of those named by him, as trustees should prevent the sale of the property, and thus defeat the very purpose for which the trust was created. When so viewed, it cannot be said that the trustees were selected by the testator because of any peculiar confidence which he reposed in them, or in their judgment, in determining when and how this property should be sold. Not only is this true, but the testator invested the trustees with title to this property; hence, the effect of the instrument was the creation of a power coupled with an interest, and all the authorities are agreed that in cases of this character the trust does not fail because one of those named as trustees declined to act, or is, for any reason, incapacitated, but the trust may be carried out by those who had qualified, or survived.

In the case of Woolridge's Heirs v. Watkins, 6 Ky., 3 Bibb, 349, decided in 1814, it was held that a mere naked power to sell, not coupled with an interest, could not be executed by one of two joint executors, but that the action of both was required.

Again, in Coleman v. McKinney, 26 Ky., 3 J. J. Marshall, 246, decided is 1830, it was said:

"By the common law, if an authority, without an interest, be given to the executors, to sell land, a sale is not valid, unless they all unite in it; because the authority is delegated, and the trust confided to all, and to no less number than all. But if the land be devised to the executors to sell, those who shall qualify, may execute the power, because the power to sell is coupled with, and is incidental to the title, vested by the will, which is in such only as shall qualify."

This principle was reaffirmed four years later, in Muldrow's Heirs v. Fox's Heirs, 2 Dana, 74; and in Clay & Craig v. Hart, 7 Dana, 1, the same principle was announced in the following language:

"According to the common law, also a power coupled with the legal title or a personal interest would survive to the survivor or survivors of several persons upon whom the power and interest or title had been conferred; because, as the interest or title survived, the power might be fed and kept alive by it, and should therefore also survive. And hence, if the trustees of the power were devisees, not of the power merely, but of the legal title also, any one survivor might execute the power."

Further citation of authority upon this point is deemed unnecessary.

The will of the testator, by the fifth clause, invests in the named trustees a power, coupled with an interest, and the failure of one of said trustees to act cannot have the effect of defeating the trust; but the right to carry it into effect, or to execute it, passed to the trustee who did qualify. As he was clothed with ample power to sell and convey the one-third interest devised to him for the use and benefit of Caroline K. Wallace, his vendee, Berger, acquired, by reason of his purchase, the absolute fee simple title to said property. The chancellor correctly so held, and the judgment is affirmed.